No. 80,112

In the Matter of RANDALL D. PALMER, *Respondent*.
(956 P.2d 1333)

Opinion filed April 17, 1998.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent Randall D. Palmer, of Pittsburg, an attorney admitted to the practice of law in the State of Kansas.

A formal complaint charged respondent with violating MRPC 1.16 (1997 Kan. Ct. R. Annot. 324) (declining or terminating representation) by withholding a client's files after being discharged and with violating MRPC 8.4 (1997 Kan. Ct. R. Annot. 366) (misconduct). Respondent filed an answer and contested the formal complaint at the panel hearing. After admitting exhibits and hearing testimony, the hearing panel, by clear and convincing evidence, found:

"1. The Respondent is an attorney at law, Kansas Registration No. 04093, with a registration address filed with the Clerk of the Appellate Courts of 118 West Third Street, P.O. Box 1101, Pittsburg, Kansas 66762, telephone number (316) 231-9890. As of the hearing, Respondent is residing at RR#4, Box 213-2, Stockton, Missouri, 65785.

"2. In 1994, Respondent was practicing law in Pittsburg, Kansas with Mark E. Fern, and Steve Angermayer, when SPM Texas Tires Recyclers, Inc., (SPM) hired the law firm to represent it in litigation. In March 1995, Mr. Angermayer left the law firm to start his own practice. SPM Vice President, Mike Elles, notified Mr. Palmer by letter dated March 30, 1995, that SPM would follow Mr. Angermayer to his new practice (Exhibit 1). In that same letter, SPM asked Mr. Palmer to turn over the SPM file in Respondent's office to Mr. Angermayer. On March 31, 1995, Mr. Palmer wrote Mr. Elles and in a postscript acknowledged receipt of Mr. Elles' letter and agreed to prepare the files and deliver them to Mr. Angermayer (Exhibit 2). He enclosed an invoice in the amount of $1,324.00 and stated there would be a final bill once he was able to calculate any remaining hours.

"3. On April 4, 1995, Mr. Angermayer wrote Respondent stating that he needed the SPM files in Respondent's office to answer discovery requests due April 26, 1995, in the SPM litigation (Exhibit 20). On April 1995, Mr. Angermayer still did not have the SPM files from the Palmer law office and he hand delivered a letter to Mr. Palmer's office once again asking for the files and noting that SPM had paid the $1,324.00 invoice (Exhibit 5). Mr. Palmer responded (Exhibit 21) offering to make part of the files available before Respondent issued the final invoice. On April 28, Mr. Angermayer again wrote to Respondent and he listed the specific files he needed to respond to discovery requests in the SPM litigation (Exhibit 6). On May 10, 1995, Mr. Palmer sent SPM a 'final' invoice in the amount of $3,081.14. On May 11, 1995, Mr. Palmer wrote to Mr. Angermayer stating that he would transfer the SPM files once SPM paid this final statement.

"4. SPM did not believe it was responsible for expenses Mr. Palmer incurred after March 30, 1995. SPM declined to pay the final invoice. Several times after May 11, 1995, Mr. Angermayer and SPM's officers requested the files from Mr. Palmer, but he refused. In December, 1995, Mr. Angermayer filed a motion in the SPM litigation to compel Mr. Palmer to turn over the files on the grounds that SPM needed the files to respond to the opposing party's requests for discovery (Exhibit 9). The opposing party in the SPM litigation had filed motions to compel SPM to answer the discovery requests. Mr. Palmer filed a response to Mr. Angermayer's motion stating that he held the files pursuant to an attorney's lien and would release them once his final bill was paid.

"5. Mr. Jes Santaularia was 55% owner of SPM with Mike Elles. He wrote the complaint letter to the Chief Deputy Disciplinary Administrator (Exhibit 14). Mr. Santaularia recalled talking with Mr. Palmer shortly after May 10, 1995. At that time, Mr. Palmer said he would not turn over the files until a final bill was paid. Mr. Santaularia could not understand what expenses had been incurred, or by whom, between late March and May 10 since Mr. Elles terminated Mr. Palmer's representation of SPM on March 30, 1995. Mr. Santaularia testified that he and his associates were able to reconstruct much of the files that Mr. Palmer held; however, they were not able to reconstruct every document Mr. Palmer had in his files. They did answer the interrogatories in without ever receiving the files from Mr. Palmer.

"6. Mr. Angermayer testified that he had handled the SPM matter while working in Mr. Palmer's law office and that SPM followed him to his own practice. He stated that it was difficult for SPM to reconstruct the documents in the Palmer law office file because SPM was defunct at the time of the lawsuit and Mr. Elles had moved out of Kansas. He explained that the first knowledge he and SPM had of Mr. Palmer's attorney's lien on the files occurred when he received Mr. Palmer's response to his motion in December 1995. Judge Brewster heard argument on the motion and took the matter under advisement. Later he ruled dismissing the motion. Mr. Angermayer also testified that SPM incurred attorneys fees that it otherwise would not have incurred if Mr. Palmer had turned over the files when requested. To date the files remain in Mr. Palmer's office.

"7. Mr. Palmer testified with regard to his distinguished career of 48 years of practice and service. He explained that the March 30, 1995, invoice was issued at the request of Mr. Elles who wanted to clear out a legal defense account. Mr. Palmer planned to render a final billing once he tallied all the hours work by his associate, Mr. Angermayer. The May 10, 1995, billing not only includes Mr. Angermayer's hours, but also Mr. Palmer's time protecting SPM's interests and putting the file together. Chairman Ramirez asked Mr. Palmer if he had filed a motion to withdraw his representation and Mr. Palmer testified that he had not. Mr. Palmer believes he rightfully holds the files until his final bill is paid because he has an attorney's lien. He testified that he gave notice to SPM of his attorney's lien in the letter dated May 10, 1995 (Exhibit 8). Mr. Palmer believes that Mr. Angermayer has the responsibility to talk to SPM and find out what [is] objectionable in Mr. Palmer's final bill. Mr. Palmer stated Mr. Angermayer should have contacted him to resolve the dispute. Yet Mr. Palmer dealt directly with SPM on the billing, because he believed Mr. Angermayer did not represent SPM with regard to the bill. And Mr. Angermayer testified that Mr. Palmer's conduct made it difficult to work out the billing. Mr. Palmer wanted to be paid for personal expenses; Mr. Palmer wrote a diatribe to the insurance clients and to SPM about Mr. Angermayer taking clients. Mr. Palmer stated he believes no real harm has been done to SPM by his withholding the files because all he has in his files are copies and faxes of the originals, and because SPM was able to reconstruct much of the file and answer the interrogatories. Mr. Palmer acknowledges that he received the April 4, 1995 letter from Mr. Angermayer stating that SPM faced an April 26, 1995 deadline for answering discovery; nonetheless Mr. Palmer did not turn over the files because, he testified, he was afraid he would not be paid for the final billing. He based this belief on Mr. Elles' failure to return his phone calls."

Based on its findings of fact, the hearing panel reached the following conclusions of law:

"Respondent's conduct violates the [Model] Rules of Professional Conduct [MRPC] Sections 1.16(d) and 8.4. The Panel finds by clear and convincing evidence that Respondent violated [MRPC] 1.16(d) in that he failed to take reasonable steps to protect SPM after Mr. Elles terminated Respondent's employment on March 30, 1995. We recognize that Judge Brewster upheld Mr. Palmer's attorney's lien on the SPM files. However the scope of this Panel's review is the [Model] Rules of Professional Conduct and Mr. Palmer's failure to turn over the SPM files violates those rules. The time period that the Panel considers critical is March 30 to April 26, 1995. During that period, Mr. Palmer still represented SPM. He had not filed a motion to withdraw his firm's representation of SPM. Also, during that time, Mr. Palmer was advised, in writing, and acknowledged in writing, that 1) the discovery deadline in the SPM litigation was April 26, and 2) that he had in his possession, the files SPM sought to use in answering the dis-

covery requests. Furthermore there was no unpaid invoice from Mr. Palmer; in fact, Mr. Palmer testified that he did not have sufficient information to render a final bill during that time frame.

"Absent from the circumstances during this time period are 1) Mr. Angermayer's motion to compel and 2) Mr. Palmer's notice to SPM that he had an attorney's lien on the files. (There could be no lien because there was no unpaid bill at that time for which to claim an attorney's lien.) Mr. Palmer himself stated that he believes he first notified SPM about his attorney's lien in his May 10, 1995, letter which accompanies the final billing. (Exhibit 7)

"Respondent stated several times he felt SPM was not harmed by his withholding the files because SPM had most of the original documents (SPM has sent copies or faxes to the Palmer law office) and because SPM was able to reconstruct its records and answer the interrogatories. The Panel notes that having 'most' is not sufficient in litigation.

"The Panel also notes, for the record, its finding of a violation of Supreme Court Rule 211(c). Procedurally, it would be better for the Disciplinary Administrator to set a Complaint for hearing after the time period for filing an Answer has run. In this present case, Respondent was not prejudiced and declined the Panel's offer to continue the hearing.

"Respondent could have best protected his client's interest by turning the files over when he received written notice of the April 26, 1995, discovery deadline. Instead he held onto the files to insure he would get paid once he issued a final billing."

In recommending discipline pursuant to Supreme Court Rule 211(f) (1997 Kan. Ct. R. Annot. 223) for the violation of MRPC 1.16(d) and 8.4, the hearing panel noted: "Respondent violated a duty to his client that caused his client additional expense in litigation. His conduct reflects poorly on the profession and the legal system."

The hearing panel noted the following aggravating factors: Respondent's actions stemmed from acrimony and anger he feels towards a former associate; respondent felt claiming his attorney's lien justified his actions; the complainant was vulnerable, being in litigation with ongoing discovery; and respondent had sufficient experience to have been attentive to his duty to turn over the files to his former client.

The mitigating factors include the absence of any prior ethical violations over a long legal career.

The hearing panel recommended

"that Respondent be publicly censured and ordered to turn over the SPM files in his possession to SPM's attorney, Mr. Angermayer. Furthermore the Panel recommends Respondent be required to pay restitution to SPM for the extra attorneys fees SPM incurred due to Respondent's withholding of their files. Mr. Angermayer shall certify to the Disciplinary Administrator the amount of the additional attorneys fees. This amount shall not exceed $3,081.14. Mr. Palmer shall not be allowed any fee for his firm's services on the SPM case after March 30, 1995.

"Costs should be assessed against Respondent in an amount to be certified by the Disciplinary Administrator."

After being properly served with a copy of the hearing panel report, respondent filed a statement in response which did not object to the final hearing report. The statement expressed strong disagreement with, criticism of, and reservations regarding certain findings and omissions of fact, conclusions of law, and recommendations, but indicated respondent had elected not to further pursue the matter. This filing can only be construed under the clear statement of Supreme Court Rule 212(d) (1997 Kan. Ct. R. Annot. 226) to be an admission of the findings of fact in the report, and this court so finds.

On February 27, 1998, after this matter was set for hearing, respondent mailed a rambling, unsigned 10-page letter directly to the Chief Justice which expressed contempt for the Disciplinary Administrator and the disciplinary system, complained of a procedural defect he had expressly waived, attempted to make responses to the hearing panel report he had previously failed to properly take exceptions to, and stated he declined to appear. This unfortunate mailing exhibits a lack of respect for the legal system.

Properly preserved and ethically followed, respondent possessed legal rights in SPM's legal file which the trial court recognized in denying SPM's motion to compel. However, based on the record presented to us and the clear requirements of our rules, the findings of fact in the report are deemed to be admitted. Due to respondent's conduct in this matter, including his correspondence with this court, we also approve the hearing panel's conclusions of law.

Nothing in our rules excuses respondent from personally appearing before this court. His failure to do so is a violation of Su-

preme Court Rule 212(d). By this conduct, respondent has forfeited any right to "make a statement with respect to the discipline to be imposed."

After reviewing the record in this action, a majority of the members of the court are of the opinion that respondent should receive published censure for his actions. The majority further adopts the remaining disciplinary recommendations of the hearing panel report.

IT IS THEREFORE ORDERED that Randall D. Palmer be disciplined by published censure.

IT IS FURTHER ORDERED that respondent immediately turn over the SPM files in his possession to SPM's attorney, Mr. Angermayer. Furthermore, respondent is directed to pay restitution to SPM for the extra attorney fees incurred due to respondent's withholding of its files in the sum of $500, the amount Mr. Angermayer has certified to the Disciplinary Administrator. Respondent shall not be allowed any fee for his services on the SPM case subsequent to March 30, 1995.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.